# In the United States Court of Federal Claims

No. 25-2058
Filed: September 30, 2026

| | |
|---|---|
| WENDELL SOMERVILLE FORTSON, II, | ) |
| *Plaintiff*, | ) |
| v. | ) |
| THE UNITED STATES, | ) |
| *Defendant*. | ) |

**OPINION AND ORDER**

## I. Background

Plaintiff Wendell Somerville Fortson, II, JD, PhD, proceeding pro se, brings this action against the United States seeking more than $100 trillion in damages, along with a series of declaratory and equitable orders, for what he terms the "American Negro Sexual Genocide." ECF No. 1 at 1; ECF No. 1, Ex. 1-1 at 1. Plaintiff alleges that, from approximately 1790 to 1865, unnamed "U.S. Supreme Court Justices et al.," "other government officials," and "European Men" enforced federal laws and court decisions granting those actors "actual and apparent legal authority" to carry out a "national ethnic cleansing program" against enslaved persons and their descendants. ECF No. 1 ¶¶ 5–6. Plaintiff alleges that various methods of sexual violence and genocide were the mechanism of this program. *Id.* at ¶¶ 7–14, 33–44. Plaintiff asserts that Black Americans hold a "natural and inalienable" stewardship, rather than ownership, interest in their own bodies, encompassing an "absolute" freedom to practice "sexual holiness"; this serves as the basis of Plaintiff's Fifth Amendment claims. *Id.* ¶¶ 46–48. He alleges that this freedom is itself a compensable property interest under the Fifth Amendment Due Process and Takings Clauses. *Id.*

The Government moves to dismiss Plaintiff's complaint for lack of subject-matter jurisdiction. ECF No. 6.

## II. Jurisdiction and Standard of Review

"Subject matter jurisdiction is a threshold requirement for a court's power to exercise jurisdiction over a case[.]" *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010). Under the Tucker Act, this court has authority to hear "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an

executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Tucker Act jurisdiction requires (1) a separate money-mandating statute that supports any claims of monetary damages against the United States and (2) a plaintiff that alleges he or she falls "within the class of plaintiffs entitled to relief." *Antonellis v. United States*, 106 Fed. Cl. 112, 114–15 (2012), *aff'd*, 723 F.3d 1328, 1331 (Fed. Cir. 2013) (noting that Tucker Act jurisdiction is a waiver of sovereign immunity). For Tucker Act jurisdiction, a plaintiff "must demonstrate that the source of substantive law he [or she] relies upon 'can fairly be interpreted as mandating compensation by the Federal Government'" for any sustained damage. *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)).

"A challenge to the Court's subject-matter jurisdiction over all or part of the claims asserted in a complaint is properly raised by motion under Rule 12(b)(1)." *Smith v. United States*, 158 Fed. Cl. 520, 524 (2022). When deciding a motion under Rule of the Court of Federal Claims ("RCFC") 12(b)(1), this court "accepts as true all uncontroverted factual allegations in the complaint, construing them in the light most favorable to the plaintiff." *Fletcher v. United States*, 26 F.4th 1314, 1321 (Fed. Cir. 2022) (citing *Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014)). "The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Id*. (citing *Hopi Tribe v. United States*, 782 F.3d 662, 666 (Fed. Cir. 2015)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3); *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

The court holds a pro se complaint to "less stringent standards" than those brought by counsel. *Estell v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). But that lenience does not relieve a pro se plaintiff from her burden to establish this court's jurisdiction. *See Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("We agree that leniency with respect to mere formalities should be extended to a pro se party, . . . [h]owever, . . . a court may not similarly take a liberal view of that jurisdictional requirement and set a different rule for *pro se* litigants only.").

## III. Discussion

None of Plaintiff's claims fall within the jurisdiction of this court. All of Plaintiff's claims are barred by this court's six-year statute of limitations. 28 U.S.C. § 2501. To the extent that he asserts claims against anyone other than the United States, i.e., former presidents, supreme court justices, and "European men," the court lacks jurisdiction to hear those claims. Similarly, this court cannot hear tort claims, 28 U.S.C. § 1491(a)(1), or criminal matters. Finally, Plaintiff has failed to identify a cognizable property interest that is required to bring a takings claim under the Fifth Amendment. Because the court lacks jurisdiction over any portion of the complaint, the court grants the motion to dismiss. Finally, even if any of the claims were within this court's jurisdiction, Plaintiff may not represent any party other than himself or immediate family members. RCFC 83.1(a)(4).

**A. Plaintiff's claims are barred by this court's six-year statute of limitations.**

This court lacks subject-matter jurisdiction over claims filed more than six years after the claim accrues. 28 U.S.C. § 2501. The statute provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." *Id.* As a general rule, "[a] cause of action against the government has first accrued 'when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence.'" *San Carlos Apache Tribe v. United States*, 639 F.3d 1346, 1350 (Fed. Cir. 2011) (quoting *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir. 1988)). Plaintiff bears "the burden of establishing jurisdiction, including jurisdictional timeliness." *Samodovitz v. United States*, No. 25-154, 2026 WL 2054190, at *2 (Fed. Cl. July 14, 2026) (quoting *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citation omitted)). When a plaintiff fails to do so, the court must dismiss the complaint. *See Samodovitz*, 2026 WL 2054190, at *2; *see also* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Plaintiff's allegations plainly state harm spanning from "1790 to 1865." *See* ECF No. 1 at 1–2. By their own terms, Plaintiff's claims accrued long before he filed his complaint. The complaint alleges various sexual assaults, rapes, and genocide. Such acts create discrete, immediate harm for accrual purposes. Given that the complaint does not allege this conduct extended beyond 1865, the claims are untimely when asserted in a complaint filed 160 years later, on December 3, 2025.

Plaintiff seeks to avoid dismissal based on his learning of genetic injuries in July 2023, when he read an article that made him "aware of the intergenerational genetically based consequences" of the conduct he alleges in the complaint. *See* ECF No. 7 at 8 (citing Jazlyn A. Mooney et al., *On the Number of Genealogical Ancestors Tracing to the Source Groups of an Admixed Population*, 224 Genetics 1, 9–13 (2023)). Based on this awareness, Plaintiff contends that "he has experienced, is currently experiencing, and will experience in the future intergenerational genetically based diseases, conditions, and challenges arising from the execution of this ethnic cleansing program and these slave-breeding programs." *Id.* at 5.

Plaintiff contends the stabilization doctrine allows him to bring his claim now. Plaintiff's reliance on the stabilization doctrine, *see id.* at 8–9 (citing *Boling v. United States*, 220 F.3d 1365 (Fed. Cir. 2000)), is misplaced. In *Boling*, the Federal Circuit concluded that "government-caused erosion" to private land constituted a Fifth Amendment taking. 220 F.3d at 1370. *Boling* explains that "the key date for accrual purposes is the date on which the plaintiff's land has been clearly and permanently taken." *Id.* This can be difficult to determine in erosion or flooding cases. Thus, in the flooding context, the Supreme Court explained that a claim does not accrue until the flooding stabilizes and the permanent nature of the occupation of property is clear. *United States v. Dickinson*, 331 U.S. 745, 750 (1947) (holding the statute of limitations did not bar an action under the Tucker Act for a taking by flooding when it was uncertain at what stage in the flooding of the land had become permanent); *see also United States v. Dow*, 357 U.S. 17, 27 (1958) (clarifying *Dickinson*'s holding and finding a claim accrues when the flooding stabilizes when the "permanent nature" of the taking is evident). "[S]tabilization occurs when it becomes clear that the gradual process set into motion by the government has effected a

permanent taking, not when the process has ceased or when the entire extent of the damage is determined." *Boling*, 220 F.3d at 1370–71.

But Plaintiff alleges specific acts of rape, sexual assault, and genocide between "1790 to 1865." *See* ECF No. 1 ¶¶ 7–14, 33–44. He argues that his claims did not accrue until his realization of the "natural and unavoidable genetically based harms" that the alleged conduct caused. ECF No. 7 at 9 ("However, the extent of the resulting damages (i.e. intergenerational genetically based harms) arising from those governmental actions did not become reasonably foreseeable until July 2023."). This misapplies the stabilization doctrine. The stabilization doctrine "does not apply outside its context. Later cases have essentially confined the stabilization doctrine to the class of flooding cases from which it originated." *Ariadne Fin. Servs. Pty. Ltd. v. United States*, 133 F.3d 874, 879 (Fed. Cir. 1998) (citing *Dow*, 357 U.S. at 27). Further, when the stabilization doctrine applies, it is in cases where the permanency of the taking is not evident until the flooding stabilizes, not when the extent of the damage becomes known. *Whiteland Holdings, L.P. v. United States*, 141 Fed. Cl. 702, 711 (2019), *aff'd sub nom. Frazer/Exton Dev., L.P. v. United States*, 809 F. App'x 866 (Fed. Cir. 2020) ("[T]he 'nature and extent of the taking' refers to the taking's permanency (or lack thereof), not the taking's damages quantum."). The stabilization doctrine, therefore, does not apply and the statute of limitations bars Plaintiff's complaint. This is consistent with accrual generally, where "[t]he 'proper focus' must be 'upon the time of the defendant's acts, not upon the time at which the *consequences* of the acts become most painful.'" *Navajo Nation v. United States*, 631 F.3d 1268, 1277 (Fed. Cir. 2011) (quoting *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)) (cleaned up) (emphasis in original).

Because all of the alleged conduct took place no later than 1865, this court lacks jurisdiction over Plaintiff's complaint.

### B. This court lacks jurisdiction to hear claims where the United States is not the defendant.

Plaintiff's complaint names "U.S. Supreme Court Justices et. al., other government officials, and European men" as those committing the alleged harm. *See* ECF No. 1 ¶¶ 49, 50. Plaintiff continues, naming other actors such as "Former U.S. Presidents," and "Former Members of the U.S. Congress." *See id.* ¶¶ 17–21. In order to confer liability on the United States, Plaintiff asserts that these groups were acting on behalf of the United States through their "actual and apparent legal authority to implement and carry out a national ethnic cleansing program" as proscribed by "laws and policies that were articulated and enforced by the U.S. Supreme Court." *Id.* ¶¶ 5–6.

The jurisdiction of this court is limited to claims against the United States government. "Claims against individuals—even in their official capacity as government officials—fall outside of this Court's jurisdiction, as this Court only possesses jurisdiction to decide suits against the United States." *Gulley v. United States*, 150 Fed. Cl. 405, 412–13 (2020) (citing *United States v. Sherwood*, 312 U.S. 584, 588 (1941) ("[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court.")). Plaintiff's complaint repeatedly lists individual wrongdoers, rather than the United States government itself, ECF No. 1 ¶¶ 49, 50. Because this court lacks jurisdiction over claims against individuals, the

court must dismiss the complaint insofar as it seeks damages from any party other than the United States.

**C. This court lacks jurisdiction over claims sounding in tort.**

Plaintiff's claims alleging sexual violence and "serious bodily and mental harm," *id.* ¶¶ 5–21, sound in tort to the extent they are not criminal acts. The Tucker Act expressly provides that tort claims do not fall within the jurisdiction of this court. 28 U.S.C. § 1491(a)(1); *e.g.*, *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort."). Plaintiff insists his claims fall "outside the scope of ordinary tort law." ECF No. 7 at 13. Congress, however, made no distinction between ordinary and extraordinary torts in the Tucker Act, which limits this court's jurisdiction to claims "not sounding in tort," or in the Federal Tort Claims Act, which grants exclusive jurisdiction over tort claims to district courts. 28 U.S.C. § 1346(b)(1). This is not a district court. Regardless of the severity of the tort, this court has no jurisdiction to hear it. Therefore, the court grants the Government's motion to dismiss Plaintiff's tort claims.

**D. This court lacks jurisdiction over criminal claims.**

The court similarly lacks jurisdiction over claims arising under the criminal laws of the United States. *Joshua v. United States*, 17 F.3d 378, 379 (Fed. Cir. 1994); *Stanley v. United States*, No. 09-262C, 2009 WL 3027448, at *3 (Fed. Cl. Aug. 18, 2009) ("[L]ike tort claims, this Court lacks jurisdiction to adjudicate the criminal conduct alleged by Plaintiff."). As a result, this court cannot hear Plaintiff's allegations of criminal misconduct, which include genocide under 18 U.S.C. § 1091, ECF No. 1 at ¶¶ 8, 33–44, and various other "methods of sexual violence" as described in Plaintiff's complaint, *id.* ¶¶ 7–10. Therefore, the court grants the Government's motion to dismiss Plaintiff's criminal claims for lack of subject matter jurisdiction.

**E. Plaintiff has not alleged a cognizable property interest.**

Finally, Plaintiff fails to allege a cognizable property interest under the Takings Clause of the Fifth Amendment. Plaintiff relies largely on *Dred Scott v. Sandford*, 60 U.S. 393, 450–52 (1857) in an attempt to substantiate his claim that enslaved individuals held a property interest in their own bodies. ECF No. 7 at 5; ECF No. 1 at 46–48. But it is well established that *Dred Scott* is no longer good law. As the Federal Circuit recognized, *Dred Scott* has been "overturned by the abolishment of slavery in the Thirteenth Amendment." *Straw Est. of Stevens v. United States*, 710 F. App'x 881, 882 (Fed. Cir. 2017). As a result, Plaintiff's allegations of bodily harm towards this class of individuals do not result in a taking of property governed by the Fifth Amendment, but sound in tort.

Here, the Federal Circuit's decision in *Straw* is illustrative. In that case, Mr. Straw alleged that the United States caused him and his family harm when it exposed them to toxic chemicals. *Id.* Specifically, he alleged that his parents were exposed to these chemicals at a military base and he was exposed in utero. *Id.* He claimed that this toxic expose violated their property interest in their bodily integrity. *Id.* The circuit rejected this argument because it was

"not aware of any case that establishes a property interest in freedom from bodily harm." *Id.* Rather, the circuit explained that "despite Mr. Straw's attempt to characterize his claims as involving a property interest, they are ultimately premised on the government's alleged breach of its duty not to harm Mr. Straw or his parents. Such claims are based in tort, not property." *Id.* at 883.

Nor can Plaintiff assert equitable estoppel to bar the Government from arguing that he has failed to allege a cognizable property interest. *See* ECF No. 7 at 14–15. Here, Plaintiff contends that because the United States enforced *Dred Scott*, the court should not allow the Government to argue that there is no property interest in being free from the bodily harm he alleges. But as explained above, *Dred Scott* has been overturned by the people and it cannot support a claim today. In other words, the court is not free to ignore the Thirteenth Amendment.

Therefore, the court grants the Government's motion to dismiss Plaintiff's claims under the Takings Clause of the Fifth Amendment.

## IV. Conclusion

The court hereby **GRANTS** the Government's Motion to Dismiss for Lack of Subject-Matter Jurisdiction, ECF No. 6. The Clerk's Office is directed to enter judgment.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge